# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | | |
|---|---|---|
| ANNA TERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-cv-00100-TWP-WGH |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Anna Terry ("Ms. Terry") requests judicial review of the final decision of the Commissioner of the Social Security Administrator ("the Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). For the following reasons, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

### A. Procedural History

Ms. Terry filed her applications for DIB and SSI on April 24, 2008, alleging a disability onset date of March 3, 2008. These claims were initially denied on July 30, 2008, and upon reconsideration on December 22, 2008. Thereafter, Ms. Terry requested a hearing, which she later requested be withdrawn. On April 7, 2010, her request for hearing was dismissed. On May 24, 2010, Ms. Terry submitted a request to have the dismissal set aside because she did not understand the ramifications of withdrawing her request for a hearing. Administrative Law Judge Christopher B. McNeil ("the ALJ") denied the request. Ms. Terry requested review of the dismissal, which was granted by the Appeals Council. On December 23, 2010, the Appeals Council reinstated Ms. Terry's request for a hearing.

A hearing was originally scheduled to take place on August 4, 2011 before the ALJ. On July 19, 2011, the ALJ informed Ms. Terry's counsel that he was being reassigned to a different district. That same day, July 19, 2011, Ms. Terry filed a request for reassignment of her case to a different ALJ in the same district. The ALJ determined there was good cause—to avoid additional cost and delay—and granted the request by telephone on July 22, 2011. It is unclear why, but the August 4, 2011 hearing was rescheduled to January 27, 2012. The ALJ ultimately did not recuse himself and presided over the video hearing, at which Ms. Terry appeared in person and by her attorney. At the hearing, the ALJ explained that his superiors at the Cincinnati and Columbus Offices of Disability Adjudication and Review ("ODAR") had determined that recusal was not appropriate or required and they instructed him that he should remain the ALJ assigned to Ms. Terry's case. Ms. Terry, a medical, and a vocation expert each testified at the hearing.

On March 2, 2012, the ALJ denied Ms. Terry's applications, and on May 22, 2013, the Appeals Council affirmed the ALJ's denial, thus making it the final decision of the Commissioner for the purposes of judicial review. 20 C.F.R § 416.1481. On July 23, 2013, Ms. Terry filed this appeal requesting judicial review pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

**B.    Medical History**

Ms. Terry was twenty-six at the time of her alleged onset date and she has a high school education. She suffers from low back pain, neck pain, headaches, anxiety, and depression. She has intermittently worked as a production machine tender, cashier, stock clerk, material handler, and hand packer, but has not worked since May 2008. Specifically, Ms. Terry loaded and unloaded machines at Jay Package and American Plastics and was a cashier for Big Lots and McDonalds.

Ms. Terry began experiencing low back pain radiating into her lower extremities in early 2008. The medical records show that she was treated from December 2008 through early 2009, in

2

early 2010, and throughout 2011. Ms. Terry's medical records include MRI testing, nerve conduction studies, and treatment plans including pain medication, injections, and physical therapy. She also received some treatment for depressive and anxiety disorders. As necessary, details about Ms. Terry's impairments and treatment will be discussed below.

**C.     The ALJ's Decision**

The ALJ began his decision by memorializing what he characterized as *ex parte* communications between himself and Cincinnati ODAR hearing office director Mary Jane Fortner ("Fortner") and Chief Administrative Law Judge Christine King ("ALJ King") regarding Ms. Terry's case. Fortner and ALJ King ordered that the ALJ retain jurisdiction over Ms. Terry's case, notwithstanding his intent to recuse himself. The ALJ further summarized emails between himself and ALJ King and Columbus ODAR Chief Administrative Law Judge John Montgomery ("ALJ Montgomery"). Specifically, the ALJ King informed the ALJ that reassignment to a new district was not good cause for recusal. ALJ Montgomery stated that Ms. Terry's counsel could not forum shop and that additional cost and delay needed to be avoided.

The ALJ then made the following findings as part of his decision. At step one, he determined that Ms. Terry had not engaged in substantial gainful activity since March 3, 2008, the alleged onset date. At step two, the ALJ found the following severe impairments: lumbar degenerative disc disease, depression, and generalized anxiety disorder. He determined Ms. Terry had the following non-severe impairments: left ear deafness and migraine headaches. At step three, the ALJ found Ms. Terry does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Ms. Terry has the residual functional capacity to perform sedentary work; lift and/or carry up to twenty pounds occasionally and up to ten pounds

3

frequently; sit up to six hours during the course of an eight-hour workday with normal breaks and stand/walk four to six hours; occasionally climb ramps or stairs, crouch and crawl; never climb ladders, ropes, or scaffolds; avoid unprotected heights and machinery; understand and remember simple instructions and maintain attention to complete simple repetitive tasks; work in an object focused work setting and adapt to routine changes in a static work setting; and is limited to work where production quotas are not critical. At step four, the ALJ found that Ms. Terry is unable to perform any of her past relevant work. At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Ms. Terry can perform. Therefore, he found Ms. Terry is not disabled.

## II. **DISABILITY STANDARD OF REVIEW**

Under the Act, a claimant is entitled to DIB or SSI if he establishes he has a disability. Disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1); 423(d)(1)(A); 1382c(a)(3)(A). The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520 and 416.924. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.*

At the first step, if the claimant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the claimant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § § 404.1520(c) and 416.924(c). Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria for any of the

4

conditions included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments"), then the claimant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work in the relevant economy.

A person will be determined to be disabled only if her impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B) and 1382a(a)(3)(G). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner. *See Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999).

In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* Although a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307. An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler*, 768 F.2d 172, 179 (7th Cir. 1985).

The ALJ's findings of fact, if supported by substantial evidence, are conclusive; however, "[i]n coming to his decision . . . the ALJ must confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). The ALJ's decision must also demonstrate the path of reasoning, and the evidence must lead logically to his conclusion. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). While the ALJ need not discuss every piece of evidence in the record, he must provide at least a glimpse into his reasoning through an adequate discussion, otherwise it will be remanded. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Zurawski v. Halter*, 245 F.3d 881, 888–89 (7th Cir. 2001).

## III. DISCUSSION

Ms. Terry's appeal can be summarized in the statement of three issues for review: (1) whether she received a fair and impartial hearing; (2) whether the ALJ failed to consider medical evidence contrary to his ruling; and (3) whether the ALJ properly rejected a medical expert's opinion. Each is addressed in turn.

### A. Whether Ms. Terry Received a Fair and Impartial Hearing

Ms. Terry argues that she failed to receive a fair and impartial hearing based on three reasons: (1) once the ALJ granted her request of recusal the ODAR was required to assign her a new ALJ to preside over her case; (2) the existence of *ex parte* communications has left her no assurance of a fair trial and these communications questioned Ms. Terry's counsel's motivations; and (3) the ALJ showed hostility at the hearing. The Court finds that none of these reasons, singularly or in combination, raises a question of impropriety such that a fair hearing was not received.

"A fair trial in a fair tribunal is a basic requirement of due process." *Keith v. Barnhart*, 473 F.3d 782, 787 (7th Cir. 2007) (quotation omitted). The analysis of a fair and impartial hearing in the social security context begins with the presumption that the hearing officer is unbiased. *Id*. at 788. The Seventh Circuit explains:

> This court has rejected allegations that due process is violated when isolated parts of an ALJ's conduct were challenged but the record as a whole demonstrated fundamental fairness in the litigant. *See Bayliss v. Barnhart,* 427 F.3d 1211 (9th Cir. 2005). It is only after a petitioner has demonstrated that the decisionmaker "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible" that the presumption is rebutted, the findings set aside, and the matter remanded for a new hearing. *Liteky v. United States,* 510 U.S. 540, 556, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

*Id.* This dictates the Court's analysis of this issue.

First, Ms. Terry cites to the Hearings, Appeals and Litigation Law manual ("HALLEX"), which conveys guiding principles and procedure to ODAR staff. Specifically, she relies on HALLEX I-2-1-60, which addresses the process of recusal under 20 C.F.R. §§ 404.940 and 416.1440. This guidance and regulations state that an ALJ may recuse him or herself if participation would give an appearance of impropriety. If an ALJ withdraws, another ALJ is to be assigned. Ms. Terry argues that once the ALJ in this case granted her request to recuse himself—which was solely because he was being reassigned to a new district, and not because of bias concerns—the ODAR was required to assign a new ALJ. The failure to do so, she argues, violates the regulations and creates a substantial likelihood of prejudice. Ms. Terry has pointed to nothing in the ODAR's or ALJ's conduct that displays antagonism, bias, or prejudice against her. This is especially true because the reason for recusal was not based on a perceived bias by the ALJ, but simply because he was being reassigned to a new district. Ms. Terry speculates that she was "left to place the fate of her case at the foot of a tainted alter," Filing No. 20, at ECF p. 15, but her suspicion is unfounded and cannot overcome the presumption of impartiality.

Second, Ms. Terry argues that the ALJ and ODAR engaged in impermissible *ex parte* communications which violated her right to due process. The Court first notes that the type of communications at issue are not the typical *ex parte* communications that are considered "anathema in our system of justice." *Guenther v. Comm'r*, 889 F.2d 882, 224 (9th Cir. 1989). Rather, because this proceeding is non-adversarial and the communications at issue were internal among agency employees, they cannot be considered intolerable *ex parte* contact. The Court further finds persuasive the Commissioner's argument that even if it were considered to be *ex parte*, "it is well-established that an *ex parte* communication which does not concern the *merits* of the case is permissible." *Drobny v. C.I.R.*, 113 F.3d 670, 680 (7th Cir. 1997) (emphasis in

8

original). Here, there is nothing in the record to show that the out-of-court communications concerned anything other than administrative and scheduling matters. Ms. Terry argues the ALJ's disclosure that ALJ King stated the ALJ's recusal appeared to be "pretextual" as it was not a good cause basis for reassignment and that plaintiff's counsel could not engage in "forum shopping" are not simple matters of procedure. The Court disagrees. ALJ King reportedly explained that he believed ALJ's reason for recusal was "pretext" since ALJs hold hearings across the country and the statement that "claimants counsel is not allowed to forum shop for a judge of his liking" is an accurate administrative rule. Ms. Terry's assertion that the communication indicates "administrative strife and unfounded and untrue preconceived notions communicated by decision-makers at the highest levels," [Filing No. 22, at ECF p. 3](Filing No. 22, at ECF p. 3), is again, speculative and unfounded. Importantly, Ms. Terry does not dispute that the discussion did not concern the merits of her case. She has not made a showing that these communications deprived her of due process.

Third, Ms. Terry argues that the ALJ was overtly hostile toward her counsel during the hearing. To begin, Ms. Terry asserts that the ALJ's "need to put the ex parte communication on the record at the onset of the hearing… exudes antagonism." [Filing No. 20 at ECF p. 20](Filing No. 20 at ECF p. 20). However, HALLEX I-2-6-40 provides that the ALJ must summarize on the record the content and conclusion of any off-the–record discussion. It was therefore proper for the ALJ to begin the hearing with this summary. Ms. Terry further speculates that "[i]t is unlikely that ALJ McNeil took kindly to being forced to preside over a case upon which [he] saw sufficient reason to withdraw. . . . This situation fostered antagonism that inevitably found its way into the hearing process." [Filing No. 20, at ECF p. 18](Filing No. 20, at ECF p. 18). Specifically, Ms. Terry alleges the ALJ was overtly hostile when he questioned her counsel for filing a pre-hearing brief just one day before the hearing. The ALJ stated that such practice did not give him time to review Ms. Terry's claim. The Court fails to see the hostility in

9

this exchange. It is a courtesy to allow judicial officers time to review materials before a proceeding. Last-minute filings necessarily receive less review than those filed in advance of a proceeding. That the filing was not required under social security procedure does not change the Court's view of the exchange. Ms. Terry also argues the ALJ was hostile when she and her counsel were discussing one of the ALJ's question, stating that "[t]he impression conveyed to all in the room was that of a bully wanting to pick a fight." Filing No. 20, at ECF p. 19. Again, the Court finds no hostility sufficient to find that due process was violated. The exchange referenced by Ms. Terry, *see* Filing No. 11-2, at ECF p. 40-43, consists of questioning that, at best, might be considered curt but not hostile. Additionally, the abrupt exchange was directed at counsel and not at Ms. Terry. It is not the type of deep-seated and unequivocal antagonism that would render fair judgment impossible. Ms. Terry has not shown that the ALJ had hostility that deprived her of due process.

**B.     Whether the ALJ Erred in Considering Evidence**

Ms. Terry contends the ALJ failed to mention competent medical evidence of an MRI showing "[f]ocal, posterior midline herniation of the C5-C6 intervertebral disc resulting in mild focal compression of the central portion of the spinal cord resulting in very mild spinal cord atrophy." Filing No. 11-10, at ECF p. 56. This MRI was taken on July 11, 2011, and summarized by nurse practitioner Stacy Quinn ("Ms. Quinn"). Ms. Terry relies upon *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998), in which the Seventh Circuit found reversible error when an ALJ's "failure . . . to mention the competent medical evidence that went contrary to Dr. Henke's opinion made the administrative law judge's explanation for his decision to deny benefits unacceptable." In that case the ALJ failed to mention the opinion evidence given by a specialist in the relevant disease and instead relied upon the opinion of a non-examining physician.

10

Here, the ALJ did not specifically mention the July 11, 2011 MRI results in his decision. He did, however, cite to medical records from visits Ms. Terry had to Ms. Quinn in July 2011. *See* Filing No. 11-2, at ECF p. 19 (citing "Exhibit 18F/p8, p11, p14"). Specifically, Ms. Terry saw Ms. Quinn on July 28, 2011, and on page 14 of the cited material, Ms. Quinn noted that an MRI showed herniation at C5-C6 and that Ms. Terry had been referred to physical therapy. Filing No. 11-11, at ECF p. 15. Ms. Quinn did not note, as pointed out by the ALJ, any "signs and symptoms typically associated with a disabling lumbar condition, such as abnormal gait, diminished sensation, or significantly reduced range of motion." Filing No. 11-2, at ECF p. 19.

While Ms. Terry is correct that an "ALJ may not ignore an entire line of evidence that is contrary to her findings," *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (quotation omitted), the MRI evidence is not contrary to the ALJ's findings. First, the results indicated "mild" and "very mild" impairment. Second, the ALJ relied upon Ms. Quinn's—who ordered and interpreted the MRI results—records in reaching his conclusions under step three and step four. Ms. Quinn's records do not suggest that the MRI results showed a severe problem, as characterized by Ms. Terry. The ALJ also considered Ms. Terry's treatment records from October and November 2011, which showed improvement. Given that the evidence is not contrary to the ALJ's findings and an "ALJ is not required to discuss every piece of evidence," *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009), the Court does not find reversible error. The Court further notes that Ms. Terry's legal argument on this point is underdeveloped and generalized. Despite this, the Court has fully considered the merits of the issue.

**C.     Whether the ALJ Erred in Rejecting Dr. Farber's Opinion**

Ms. Terry argues that the ALJ erred when it rejected Mark Farber's—a medical expert who testified at Ms. Terry's hearing—opinion that she met Listing 1.04 from 2008 until October 2011,

when treatment improved her lumbosacral disc disease. The ALJ found that while an MRI showed nerve root abutment, the results did not indicate "nerve root compromise" as required by Listing 1.04. The ALJ rejected the Dr. Farber's opinion because Dr. Farber did not rely on "evidence of ongoing signs consistent with the listing requirements." [Filing No. 11-2, at ECF p. 22](). Ms. Terry quite briefly argues this is reversible error, stating in her reply that the "ALJ does not discuss his rationale rejecting Dr. Farber's opinion in part." [Filing No. 22, at ECF p. 5](). Yet the ALJ did give his rationale, as noted above, which the Court finds reasonable and supported by substantial evidence. Again, the Court notes that Ms. Terry's argument on this issue is underdeveloped, yet the Court has still considered the merits and finds no cause for reversible error.

## IV. CONCLUSION

For the reasons discussed above, the Court **AFFIRMS** the Commissioner's decision denying benefits. Ms. Terry's appeal is **DENIED**.

**SO ORDERED.**

Date: 9/12/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Paul A. Brizendine
BRIZENDINE LAW OFFICE, LLC
paul@brizendinelaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov